IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RAYMOND IGLESIAS and KIMBERLY
IGLESIAS,
          Plaintiffs,

-vs-                                          Case No. A-15-CA-110-SS

CITIMORTGAGE, INC.,
          Defendant.

**O R D E R**

       BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiffs Raymond Iglesias and Kimberly Iglesias's Motion to Remand [#7], Defendant CitiMortgage's Response [#11] thereto, Defendant's Motion to Dismiss Plaintiffs' Original Petition [#5], Plaintiffs' Response [#8] thereto, Defendant's Motion to Dismiss Plaintiffs' First Amended Petition [#10], Plaintiffs' Response [#12] thereto, and Defendant's Reply [#14] thereto. Having considered the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

**Background**

       On December 31, 2008, Plaintiffs Raymond and Kimberly Iglesias obtained a $140,000 home equity loan secured by a lien on their property located at 2703 Cheney Cove, Austin, Texas 78745. Plaintiffs executed a Note and a Home Equity Security Instrument evidencing the transaction which were subsequently assigned to Defendant CitiMortgage (Citi). Plaintiffs used the proceeds from the

home equity loan to satisfy a prior purchase money lien encumbering the Cheney Cove property; in other words, Plaintiffs refinanced their mortgage.

On January 5, 2015, Plaintiffs filed their original petition in the 345th Judicial District Court of Travis County, Texas, claiming Citi should be required to forfeit the outstanding portion of the Note not equitably subrogated to the prior lienholder's interest because, when made, the home equity loan failed to conform to various requirements set forth in article XVI, § 50(a)(6) of the Texas Constitution. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x) (setting forth forfeiture remedy). Plaintiffs also requested the "return of all sums that they have paid to date under the portion of the note that has not been subrogated," costs, attorney's fees, and exemplary damages. Notice Removal [#1-2] Ex. 1 (Orig. Pet.) ¶¶ 17–23. Plaintiffs' prayer for relief sought "judgment in an amount not to exceed the sum of $50,000." *Id.* at 6.

Citi removed the case on February 6, 2015, invoking this Court's diversity jurisdiction. Plaintiffs subsequently filed their motion to remand, arguing diversity jurisdiction cannot lie because the amount in controversy is less than $75,000. Mot. Remand [#7] ¶ 4. On February 26, 2015, Plaintiffs filed an amended petition removing their request for exemplary damages and specifying that the amount of the Note not subject to equitable subrogation is $26,948.70. Am. Pet. [#6] ¶¶ 12–14. Plaintiffs arrive at that figure by subtracting the amount of the prior lien, $113,051.29, from the original amount of the home equity loan, $140,000.[1] *See* Mot. Remand [#7] ¶ 4. The amended petition seeks "a declaratory judgment and/or injunctive relief" requiring Citi to forfeit the $26,948.70, the return of all payments applied to the unsubrogated portion of the note, costs, and attorney's fees.

---

[1] Plaintiffs' math is off by $0.01. $140,000 minus $113,051.29 equals $26,948.71.

## Analysis

Both a motion to remand and motion to dismiss are presently pending. As set forth below, Plaintiffs contend the Court may not exercise diversity jurisdiction because the amount in controversy requirement is not satisfied. The Court disagrees with Plaintiffs, finds jurisdiction is proper, and thus reaches Citi's motion to dismiss, which contends Plaintiffs' suit is barred by limitations. Because Plaintiffs' claims are indeed time-barred, this case must be dismissed.

### I.   Motion to Remand

#### A.   Legal Standard—Diversity Jurisdiction in Removed Cases

"[T]he burden of establishing federal jurisdiction is placed upon the party seeking removal." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Moreover, because removal jurisdiction raises significant federalism concerns, courts must strictly construe removal jurisdiction. *Id.* District courts have original jurisdiction over civil actions between "citizens of different States," where the amount in controversy is over $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The Supreme Court has interpreted this statute to require "complete diversity"—that is, the citizenship of every plaintiff must be different from that of every defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Further, the removal statute states diversity actions are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

#### B.   Application

There is no dispute the Plaintiffs and Citi, citizens of Texas and New York and Missouri, respectively, satisfy the complete diversity of citizenship requirement. *See* Notice Removal [#1] at 2–3; Mot. Remand [#7] ¶ 3. Only the amount in controversy is contested, with the Plaintiffs

maintaining they seek no more than $50,000, inclusive of costs and attorney's fees, and with Citi arguing the total value of the relief Plaintiffs seek is $104,537.33. While neither party's valuation is on the mark, the Court finds Citi has successfully shown it is more likely than not the amount in controversy exceeds $75,000. Accordingly, the motion to remand is denied.

"'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (per curiam) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). In the usual case involving mortgage lending, the plaintiff is facing foreclosure of his or her property and sues with the ultimate goal of stopping the foreclosure sale and retaining the property; thus, the object of the litigation is the property itself, and the value of the property represents the amount in controversy. *See id.* (citing *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973)). In this case, however, Plaintiffs do not seek to halt foreclosure,[2] as they recognize that even if Citi is required to forfeit the loan, Citi would remain equitably subrogated to the prior purchase money lien. *See* Am. Pet. [#6] ¶ 12; Mot. Remand [#7] ¶ 4; Notice Removal [#1] at 4. Thus, it is the amount of the unsubrogated debt plus the value of the payments which Plaintiffs seek be returned plus attorney's fees—the value of all that Plaintiffs seek—which controls in determining the amount in controversy.

As noted, Plaintiffs arrive at the amount of the unsubrogated debt by subtracting the amount of the prior purchase money lien, $113,051.29, from $140,000, the original amount of the home

---

[2] In any event, while foreclosure is never explicitly mentioned in the pleadings, it appears it has already occurred. *See* Notice Removal [#1-7] Ex. 6 (Nurse Decl.) ¶ 5 (including "foreclosure related expenses" in calculation of amount due under the Note); *id.* [#1-5] Ex. 4 (Civil Cover Sheet) (describing the present cause of action as "wrongful foreclosure").

equity loan. Citi contends the $113,051.29 must be subtracted from the total outstanding balance on the Note, not the original amount of the loan, and the Court agrees. Plaintiffs have not stipulated or otherwise represented they would remain responsible for the amount currently owing under the Note in excess of the original $140,000 balance. Citi has attached a sworn declaration and accompanying exhibits to its notice of removal evidencing that the total amount currently owing under the Note is $189,584.01, which includes principal in the amount of $139,896.06, interest in the amount of $25,574.85, escrow advances in the amount of $21,995.39, late fees in the amount of $241.36, and foreclosure-related expenses in the amount of $1,876.35. Nurse Decl. ¶ 5; Notice Removal [#1-7] Ex. D (Loan Payoff Sheet). The difference between $189,584.01 and $113,051.29 is $76,532.72. As escrow advances are not subject to forfeiture,[3] the value of Plaintiffs' requested declaratory relief is, at minimum, $54,537.33.

Citi also includes the amount of interest which will accrue on the unpaid principal balance during the pendency of this suit in its calculation of the amount in controversy, representing that under the Note, interest on the unpaid principal balance accrues at 4.875% annually. Under the diversity statute, however, the amount in controversy must be shown "exclusive of interest and costs." 28 U.S.C. § 1332(b). The Supreme Court first discussed the propriety of including interest in the amount in controversy in *Brown v. Webster*, 156 U.S. 328 (1895), where the Court distinguished between "interest as such" and interest "as an instrumentality at arriving at the amount of damages to be awarded on the principal demand," and reasoned that where interest is an essential ingredient of the plaintiff's principal claim, rather than merely an "accessory" demand, it can be

---

[3] *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x) ("[T]he lender or any holder of the note . . . shall forfeit *all principal and interest* of the extension of credit if the lender or holder fails to comply with the lender or holder's obligations under the extension of credit . . . ." (emphasis added)).

included in the amount in controversy. *Id.* at 330; *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968) (citing *Brown*). "Accessory" interest is excluded from the jurisdictional calculation to prevent the plaintiff from delaying suit until his claim, with accrued interest, exceeds the amount-in-controversy requirement. *Brainin*, 396 F.2d at 155; WRIGHT, MILLER, & COOPER, FED. PRAC. & PROC. § 3712. Consequently, courts have held that interest accrued on a note prior to maturity, and therefore payable according to the terms of the note, is a part of the amount in controversy, while interest accruing after maturity is not. *See Greene Cnty. v. Kortrecht*, 81 F. 241, 241 (5th Cir. 1897) (holding interest on bonds accruing after maturity "has an accessory relation to the principal of the bond" and therefore is excluded from calculation of the amount in controversy).

Here, the Court finds the amount of interest which will accrue during the pendency of this suit cannot be included in the jurisdictional calculation for two reasons. First, Citi's contention the interest should be included is essentially an attempt to manufacture federal jurisdiction from the defendant's, rather than the plaintiff's, side of the bar. As the animating force behind excluding interest from the calculation is preventing the manufacturing of federal jurisdiction, what's good for the goose must be good for the gander. Second, as Citi has apparently already foreclosed on the Iglesias's property, *see supra* note 2, the Note has in all likelihood already matured.[4] Consequently, the interest on the principal which will accrue during the pendency of this litigation has a merely accessory relation to the balance already accrued, as it represents "a delay in payment after maturity," and cannot be included in calculation of the amount in controversy. *See Kortrecht*, 81 F. at 241; *Brady v. UBS Fin. Servs., Inc.*, 696 F. Supp. 2d 1263, 1270–71 (N.D. Okla. 2010).

---

[4] The Note is not a part of the present record. However, the Home Equity Security Instrument permits Citi to accelerate by "requir[ing] immediate payment in full of all sums secured by this Security Instrument" in the event of default and failure to cure. Notice Removal [#1-7] Ex. A (Security Instrument) ¶ 21.

The value of the payments Plaintiffs request be refunded, however, does add to the amount in controversy. Plaintiffs represent they are "only asking for the return of payments which were applied to the portion of the note which is not subrogated" which will "involve[] computing the percentages," and state they "believe this amount to be nominal." Mot. Remand [#7] ¶ 4. Citi provides evidence Plaintiffs have paid $14,170.30 in principal and interest on their mortgage, and notes after accounting for that $14,170.30, the amount due on Plaintiffs' loan is still more than the amount to which Citi is equitably subrogated. The Court agrees with Citi that Plaintiffs would be entitled to return of the entire $14,170.30 if successful, bringing the total amount in controversy—without accounting for attorney's fees—to $68,707.63.

That leaves the total $6,292.37 short of $75,000, having yet to account for Plaintiffs' claimed attorney's fees. As of 2013, the median hourly rate for an attorney practicing in the Austin—Round Rock locality is $259.[5] At that rate, an attorney would need to bill 24.3 hours of time on this case to charge $6,292.37. While that fee would likely be at the high end within the range of billables on a case of this nature, it is not outside the realm of possibility.

Accordingly, when all of Plaintiffs' claims are taken into account, the Court finds Citi has shown it is more likely than not that the amount in controversy here exceeds $75,000, exclusive of interest and costs. Once a defendant shows the amount in controversy more likely than not exceeds the jurisdictional amount, "the plaintiff must be able to show that, as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411 (5th Cir. 1995). Plaintiffs failed to file

---

[5] STATE BAR OF TEXAS, DEP'T OF RESEARCH & ANALYSIS, 2013 HOURLY FACT SHEET 8 (2013), https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=27264.

a reply to Citi's response. Reviewing the Plaintiffs' pleadings, the Court concludes Plaintiffs have failed to carry their burden. Accordingly, Plaintiffs' motion to remand must be denied.

## II.    Motion to Dismiss

### A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*,

14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B.  Application**

Plaintiffs contend their home equity loan was made in violation of the Texas Constitution because Citi's predecessor in interest offered Plaintiffs a loan which exceeded eighty percent of the fair market value of the property on the date of offering. *See* TEX. CONST. art. XVI, § 50(a)(6)(B). As previously discussed, given the alleged infirmity, Plaintiffs ask Citi be required to forfeit the unsubrogated portion of the Note and return Plaintiffs' payments made on the loan. As previously noted, Citi contends Plaintiffs' suit is time-barred, and the Court agrees.

Sections 50(a)(6)(A)–(Q) of the Texas Constitution govern home equity liens, and include various requirements governing such liens, such as the requirement the amount of a home equity loan not exceed eighty percent of the fair market value of the property on the date the loan was offered. *See* TEX. CONST. art. XVI, § 50(a)(6)(B); *Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391, 394 (Tex. App.—Dallas 2013). Section 50(a)(6) of the Texas Constitution does not contain a specific limitations period; in Texas, where no express limitations period exists, the residual four-year statute of limitations applies. *Williams*, 407 S.W.3d at 394 (citing TEX. CIV. PRAC. & REM. CODE § 16.051). Both Texas courts and the Fifth Circuit have held that the four-year limitations period applies to claims a home equity loan was constitutionally infirm when made. *See Williams*, 407 S.W.3d at 395–96 (collecting cases); *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674–75 (5th Cir. 2013) (discussing *Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342 (Tex. 2001), as providing

indirect support for the applicability of the four-year limitations period). The Court finds the four-year limitations period is applicable here.

The Court therefore need only determine the date Plaintiffs' claim accrued to resolve the limitations issue, and that answer is clear: Plaintiffs' claim accrued on the date of closing of their home equity loan. *See Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex. App.—Dallas 2008) ("[W]e conclude the legal injury occurred when Countrywide made a loan to the Riveras in excess of the amount allowed by law. . . . Thus, the Riveras' cause of action for Countrywide's violation of the eighty-percent loan cap resulting in forfeiture . . . accrued . . . the date of closing of the Riveras' home equity loan."). Plaintiffs' home equity loan closed in December 2008. Am. Pet. [#6] ¶ 6. Thus, they had until December 2012 to file suit. As this suit was filed on February 6, 2015, it is clearly time-barred, and this suit must be dismissed in its entirety.

## Conclusion

Accordingly,

IT IS ORDERED that Plaintiffs Raymond Iglesias and Kimberly Iglesias's Motion to Remand [#7] is DENIED;

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Plaintiffs' Original Petition [#5] is DISMISSED AS MOOT; and

IT IS FINALLY ORDERED that Defendant's Motion to Dismiss Plaintiffs' First Amended Petition [#10] is GRANTED.

SIGNED this the 12th day of May 2015.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE